UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALLEGIANCE BEHAVIORAL HEALTH LLC,<br><br>Plaintiff,<br><br>v.<br><br>BRYAN NICKELS, et al.,<br><br>Defendants. | Case No. 1:25-cv-00453-AKB<br><br>**MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTIONS TO DISMISS** |

Pending before the Court are the Motions to Dismiss of Defendants Bryan Nickels, Tyler Beck, and the Idaho Office of Administrative Hearings (OAH) (Dkt. 13) and Defendants Juliet Charron, Lori Stiles, and the Idaho Department of Health and Welfare (IDHW or the Department) (Dkt. 16). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal arguments are adequately presented, and that oral argument would not significantly aid its decision-making process, and it decides the motions on the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(e)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons set forth below, the Court grants Defendants' motions in part and denies in part as moot.

## I. BACKGROUND

Plaintiff Allegiance Behavioral Health LLC (Allegiance) is a service provider that provides behavioral health services to Idaho Medicaid patients under the Idaho Behavioral Health Plan (Dkt. 5 ¶¶ 13, 66). The events that gave rise to this action began in January 2025, when the IDHW suspended all Medicaid payments to Allegiance after it received what it claimed to be a "credible

allegation of fraud" in its billing practices (*id.* ¶¶ 1, 4, 86). The suspension was based on a referral report that Magellan, an IDHW contractor, had compiled after investigating Allegiance's billing practices (hereinafter Magellan report) (*id.* ¶¶ 131, 134, 176). Allegiance subsequently filed an administrative appeal of the suspension (*id.* ¶¶ 112–15).

During the contested case hearing, Allegiance requested documents underlying the suspension—primarily the Magellan report (*id.* ¶¶ 117–24). IDHW maintained that it was only required to provide the witnesses and documents it intended to present at the hearing (*id.* ¶¶ 118–21). After a pre-hearing conference, IDHW produced more than 1,600 pages of documents to Allegiance, including a "heavily redacted" version of the Magellan report (*id.* ¶¶ 129, 132). Allegiance objected to the redactions and IDHW's failure to produce additional documents and renewed its request to compel IDHW to provide additional, unredacted documents, which Administrative Law Judge (ALJ) Beck denied (*id.* ¶ 130). ALJ Beck concluded that IDHW had provided the documents it intended to rely on at the hearing, as required by the Idaho Administrative Code (IDAPA), and that requiring IDHW to remove the redactions would be unduly burdensome and expensive (*id.* ¶¶ 142, 146). Following several days of the hearing, ALJ Beck issued a preliminary order upholding the suspension (*id.* ¶¶ 184–85). Rather than seeking judicial review in state court, Allegiance filed this action in August 2025 (*id.* ¶¶ 185–89). Allegiance subsequently amended its complaint in November 2025.

Allegiance brings two causes of action. First, Allegiance alleges that ALJ Beck and Stiles violated its right to due process under the Fourteenth Amendment (*id.* ¶¶ 190–207). Second, it seeks judicial review of the agency action pursuant to Idaho Code § 67-5279 (*id.* ¶¶ 227–36). Allegiance also seeks a declaratory judgment concerning Defendants' violation of the Idaho Administrative Procedure Act (*id.* ¶¶ 208–26). Defendants include Chief Administrative Law

Judge Bryan Nickels, Administrative Law Judge Tyler Beck, IDHW Director Juliet Charron, IDHW Medicaid Program Integrity Unit Manager Lori Stiles, the OAH, and the IDHW (*id.* ¶¶ 14–19). CALJ Nickels and IDHW Director Charron are sued in their official capacities, while ALJ Beck and Stiles are sued in their official and personal capacities (*id.* ¶¶ 14–17). Allegiance brings its federal claim under 42 U.S.C. § 1983 against ALJ Beck and Stiles (*id.* at ¶¶ 190-207) and its state-law claim under the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367. In general, Allegiance argues that the Defendants' actions throughout the administrative appeal deprived it of its right to procedural due process; the rules on which the OAH relied conflict with state and federal law; and the Court should set aside the decision upholding the suspension (*id.* ¶¶ 190–233).

In December 2025, Defendants moved to dismiss Allegiance's complaint for lack of subject matter jurisdiction and failure to state a claim (Dkt. 13; Dkt. 16).[1] Allegiance opposes the motions (Dkt. 19).

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading that merely pleads "labels and conclusions" or a "formulaic recitation" of the elements of a cause of action, or "naked assertions" devoid of "further factual enhancement" will not suffice. *Id.* Determining whether a complaint states a plausible claim

[1] Because the Defendants raise the same legal arguments in support of their motions to dismiss, the Court addresses the motions together.

for relief is a context-specific task requiring the court to draw on its judicial experience and common sense. *Id.*

Under Rule 12(b)(6), the court must accept the plaintiff's factual allegations as true and grant all reasonable inferences in the plaintiff's favor. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. To survive a Rule 12(b)(6) motion to dismiss, the non-conclusory factual allegations, and reasonable inferences from those allegations, must state a claim to relief that is plausible on its face. *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009). The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether it "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore & Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007) (citation modified).

Judicial immunity is properly raised under Rule 12(b)(6) as a motion to dismiss for failure to state a claim. *Mullis v. U.S. Bankr. Ct. for Dist. of Nev.*, 828 F.2d 1385, 1387 n.6 (9th Cir. 1987); *Romano v. Bible*, 169 F.3d 1182, 1185-86 (9th Cir. 1999). When considering a Rule 12(b)(6) motion, the court takes all the factual allegations in the complaint as true, but is not "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

## III. ANALYSIS

Defendants move to dismiss Allegiance's complaint on the grounds that ALJ Beck and Stiles are entitled to absolute immunity; the Eleventh Amendment bars Allegiance's claim against OAH, IDHW, and CALJ Nickels, IDHW Director Charron, ALJ Beck, and Stiles in their official capacities; and IDHW was not timely served (Dkt. 13 at 2; Dkt. 16 at 2). Because the Court concludes that Allegiance's only federal claim is barred by absolute immunity, the Court need not address Defendants' remaining arguments for dismissal.

### A. Absolute Immunity

Defendants argue absolute immunity bars Allegiance's § 1983 claim against ALJ Beck and Stiles (Dkt. 13-1 at 2; Dkt. 16-1 at 2). Allegiance contends ALJ Beck is not entitled to judicial immunity because he did not perform "the role of the modern federal hearing examiner or administrative law judge" (Dkt. 19 at 10) (quoting *Butz v. Economou*, 438 U.S. 478, 513 (1978)). It also argues Stiles is not entitled to absolute immunity because she was not acting as a prosecutor in a criminal proceeding (*id.* at 12–13).

Under the doctrine of absolute judicial immunity, "[s]tate and federal executive officials are absolutely immune from § 1983 suits if they perform "'special functions' which, because of their similarity to functions that would have been immune when Congress enacted § 1983, deserve absolute protection from damages liability." *Buckwalter v. Nev. Bd. of Med. Exam'rs*, 678 F.3d 737, 740 (9th Cir. 2012), *as amended* (June 8, 2012) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 268–69 (1993)). Absolute immunity for judicial officers "is justified and defined by the functions it protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219, 227 (1988). Once it is determined that an official was acting in their judicial or prosecutorial capacity, absolute immunity applies, "however erroneous the act may have been, and

however injurious in its consequences it may have proved to the plaintiff." *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986).

To determine whether a state agency official is entitled to judicial immunity, courts consider "whether the actions taken by the official are 'functionally comparable' to that of a judge or a prosecutor." *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 923 (9th Cir. 2004) (quoting *Butz*, 438 U.S. at 513). This inquiry involves two steps. First, the Court considers whether the official generally functions in a capacity analogous to that of a judge or prosecutor. To aid in that inquiry, courts should consider the following nonexclusive factors:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985). After determining that the *Butz* factors have been met, the Court considers whether the specific actions at issue "are judicial or closely associated with the judicial process." *Mishler v. Clift*, 191 F.3d 998, 1007 (9th Cir. 1999). Only acts closely associated with the judicial process are entitled to absolute immunity. *Id.* Judicial immunity is an immunity from suit—not just the award of damages. *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

**1. ALJ Beck**

Allegiance alleges that ALJ Beck denied it due process by applying IDAPA 16.05.03.120[2] to limit prehearing discovery to the witnesses and documents the Department intended to present,

---

[2] IDAPA 16.05.03.120 provides, in relevant part, "prehearing discovery is limited to obtaining the names of witnesses and copies of documents the opposing party intends to offer as exhibits. The hearing officer may order production of this information if a party refuses to comply after receiving a written request. The hearing officer will issue such other orders as are needed for the orderly conduct of the proceeding."

rather than requiring disclosure of the redacted or omitted materials Allegiance sought (Dkt. 19 at 10). Allegiance contends that, as a result, ALJ Beck failed to provide Allegiance a full opportunity to obtain relevant information, to cross-examine witnesses, and to present evidence and argument (*id.*). Defendants respond that ALJ Beck is entitled to absolute immunity because he performs quasi-judicial functions (Dkt. 13-1 at 10). To determine whether to grant absolute immunity, the Court must consider the *Butz* factors.

The first factor, which looks at the need to assure that the individual can perform his functions without harassment or intimidation, weighs in ALJ Beck's favor. That concern is particularly relevant here because the Department administers Idaho's Medicaid program and has authority to take enforcement actions against Medicaid providers, including reducing, limiting, or suspending payment of claims and terminating provider agreements. IDAPA 16.03.09.205.03 (2023). Those enforcement decisions are subject to contested-case proceedings under IDAPA 16.05.03. Because the exercise of that authority may predictably generate damages actions from providers dissatisfied with the Department's decisions, immunity protects hearing officers from harassment and intimidation when resolving those disputes. *See Olsen*, 363 F.3d at 924.

The second *Butz* factor asks whether procedural safeguards reduce the need for private damages actions. Allegiance argues they do not here because IDAPA 16.05.03.120 limits prehearing discovery to the names of witnesses and documents a party intends to offer as exhibits (Dkt. 19 at 11–12). Allegiance contends this limitation, combined with ALJ Beck's refusal to order production of additional materials, left it without the procedural protections required by Idaho law and deprived it of a meaningful opportunity to respond to the Department's evidence (*id.* at 10–12).

The Ninth Circuit has found adequate procedural safeguards in circumstances involving fewer protections than those available here. In *Olsen*, the court considered an Idaho administrative scheme that provided notice, disclosure of relevant facts and issues, opportunities to present evidence and argument, and written orders with findings and procedures for reconsideration or administrative relief. 363 F.3d at 924–25. The court concluded those procedures provided sufficient safeguards comparable to those available under federal law. *Id.* The court also emphasized that "it is the available procedures, not the manner in which they are exercised in a particular case, that is the critical inquiry." *Id.* at 925 (quoting *Mishler*, 191 F.3d at 1006).

Likewise, in *Buckwalter*, the Ninth Circuit considered Nevada's emergency summary-suspension procedure, which provided substantially fewer procedural protections than a formal disciplinary proceeding. 678 F.3d at 742–43. The physician received no notice of the ex parte proceeding and no opportunity to contest the charges before his prescribing authority was suspended. *Id.* at 742. Nevertheless, the court found sufficient safeguards because the summary suspension was followed by a formal administrative hearing with the full complement of procedural protections. *Id.* at 742–43.

The Idaho scheme applicable here provides safeguards comparable to, and in several respects more extensive than, those found sufficient in *Olsen* and *Buckwalter*. As in *Olsen*, the rules governing IDHW contested cases provide for notice, prehearing procedures, subpoenas for witnesses and documents, representation by counsel, evidentiary protections, a recorded hearing, and a written preliminary order containing findings and a reasoned statement. IDAPA 16.05.03.102–.104, .123, .134, .137–.138 (2023). The rules also provide for administrative review of the preliminary order, after which a party may seek judicial review. IDAPA 16.05.03.150, 152 (2023); Idaho Code §§ 67-5270, 67-5279. And Idaho law requires the presiding

officer to regulate the proceeding to facilitate disclosure of relevant facts and issues and affords the parties an opportunity to respond and present evidence and argument. § 67-5242. Finally, Idaho law extends a right to judicial review, providing Allegiance with a right to appeal a final agency action. § 67-5270. These procedures provide the necessary safeguards to reduce the need for private damages actions.

Next, the Court considers the insulation from political influence. Allegiance does not directly challenge this factor, but it contends that ALJ Beck "functioned more like an executive-agency hearing officer embedded within the [IDHW]," applying agency-specific rules promulgated by the Department (Dkt. 19 at 10). In *Olsen*, the Ninth Circuit concluded that this factor favored immunity where the governing structure sufficiently insulated the adjudicators from political influence, noting the Board's composition, conflict-of-interest restrictions, and the procedural requirements governing its proceedings. 363 F.3d at 925. The statutory structure here provides comparable, if not greater, insulation. OAH is established as a separate entity within the department of self-governing agencies and conducts contested cases arising from agency orders. Idaho Code § 67-5280. OAH appoints and supervises the ALJs, and Idaho law prohibits an agency or state officer from influencing the selection of a hearing officer. *Id.* §§ 67-5282, 67-5284. The Chief Administrative Law Judge is also charged with protecting the decisional independence of OAH's administrative law judges. *Id.* § 67-5282. OAH General Order No. 1 likewise expressly preserves an ALJ's decisional independence when applying IDHW's rules to IDHW contested cases (Dkt. 5-4 at 2–4). The third *Butz* factor therefore weighs in favor of absolute immunity.

The remaining *Butz* factors—the importance of precedent, the adversary nature of the process, and the availability of appellate review—also support absolute immunity. In *Olsen*, the Ninth Circuit concluded that these factors were satisfied where Idaho law provided for precedential

agency orders, adversarial proceedings, written decisions containing findings and reasons, reconsideration or administrative relief, and judicial review. 363 F.3d at 925–26. The same is true here. Although it is not clear to what extent ALJ Beck relied on precedent in adjudicating Allegiance's case, Idaho law provides for indexing precedential agency orders and guidance documents. Idaho Code § 67-5250. The proceedings before ALJ Beck were adversarial, with the parties represented by counsel and permitted to present evidence and argument, examine witnesses, and respond to the opposing party's evidence. IDAPA 16.05.03.123, .134 (2023). Finally, errors are subject to multiple levels of review. A party may seek administrative review of a preliminary order, after which the final agency action is subject to judicial review. IDAPA 16.05.03.150, .152 (2023); Idaho Code §§ 67-5270, 67-5279. These procedures provide the adversarial process and avenues for correcting error that support treating ALJ Beck's adjudicative functions as judicial in nature. *See Olsen*, 363 F.3d at 925–26.

Having found that ALJ Beck generally functions in a capacity analogous to those of a judge, the Court must now determine whether the specific actions at issue here were judicial in nature. *See Mishler*, 191 F.3d at 1007. Allegiance challenges acts ALJ Beck took while presiding over its administrative appeal. Specifically, Allegiance alleges ALJ Beck denied its requests for unredacted documents; declined to require production of additional materials; considered Allegiance's arguments regarding the applicable federal and state law; and ultimately issued a preliminary order upholding the suspension. (Dkt. 5 ¶¶ 183, 196–98). These are adjudicative functions that are functionally comparable to those performed by a judge.

Allegiance's arguments regarding the adequacy of Beck's rulings do not alter that conclusion. Whether Beck correctly applied the governing discovery rules, properly considered Allegiance's objections, or reached the correct result are questions concerning the merits of his

rulings, not whether he performed judicial functions. "[T]he acts of [ALJ Beck] are no less judicial . . . because they may have been committed in error." *Mishler*, 191 F.3d at 1006. Judicial immunity applies even when a judicial officer's acts are erroneous or exceed the officer's authority, so long as the officer did not act in the clear absence of all jurisdiction. *Mireles*, 502 U.S. at 11–13. Because Allegiance's due process claim arises from ALJ Beck's participation in an administrative hearing, he is entitled to absolute immunity from that claim.

**2. Lori Stiles**

Stiles is also entitled to absolute immunity from Allegiance's § 1983 claim. As an initial matter, Allegiance contends Stiles cannot have absolute immunity because she "was not acting as a state prosecutor 'in the criminal justice system,' and Allegiance has not alleged a 'retaliatory' claim against her related to criminal charges (Dkt. 19 at 12–13) (quoting *Butz*, 438 U.S. at 510). Allegiance is mistaken. First, the portion of *Butz* Allegiance cites is a review of case law demonstrating the genesis of absolute immunity. 438 U.S. at 510 (reviewing the Court's holding in *Imbler v. Pachtman*, 424 U.S. 409 (1976), extending absolute immunity to state prosecutors). Indeed, *Butz* extended immunity to agency officials performing functions analogous to those of a prosecutor in enforcement proceedings. *Id.* at 515. Second, courts have definitively extended absolute immunity beyond criminal prosecutors. *See Demoran v. Witt*, 781 F.2d 155, 156–57 (9th Cir. 1985) (explaining "judicial immunity has been extended to federal hearing officers and administrative law judges, federal and state prosecutors, witnesses, grand jurors, and state parole officers"). Thus, the fact that Stiles was not acting as a criminal prosecutor does not foreclose absolute immunity.

As discussed above, the contested-case proceedings here were, at a minimum, quasi-judicial. *See Olsen*, 363 F.3d at 925–26. Idaho law requires a presiding officer in a contested case to regulate the proceeding to provide parties with notice and an opportunity to respond, present

evidence, and present argument. Idaho Code § 67-5242(3). The Department's 2023 rules likewise provide for contested-case proceedings under IDAPA 16.05.03, including prehearing procedures, subpoenas, representation by counsel, presentation of evidence, examination of witnesses, and a recorded hearing. IDAPA 16.05.03.102–.104, .123, .134, .137 (2023). For example, the rules specifically provide for an administrative appeal and hearing following the Department's suspension of a payment or provider-agreement suspension for fraud or abuse. IDAPA 16.05.07.003, .210, .220 (2023). The resulting decision is subject to administrative review and judicial review. IDAPA 16.05.03.150–.152 (2023); Idaho Code § 67-5270. These procedures "'share[] enough of the characteristics of the judicial process that those who participate in such adjudication' are entitled to absolute immunity." *See Torres v. Goddard*, 793 F.3d 1046, 1051 (9th Cir. 2015).

Having found that the contested-case proceedings were quasi-judicial, the Court must now assess whether Stiles's alleged unconstitutional conduct was "functionally comparable" to that of a judge or prosecutor. *Butz*, 438 U.S. at 513; *Buckley*, 509 U.S. at 269. Absolute immunity extends to agency officials who perform functions analogous to those of prosecutors, including functions associated with the initiation and conduct of adversarial administrative proceedings. *Butz*, 438 U.S. at 515; *Romano*, 169 F.3d at 1186. In determining whether an official was performing a prosecutorial function, courts consider whether the challenged conduct was undertaken in the official's role as an advocate in an adjudicative proceeding or instead was investigative or administrative in nature. *Buckley*, 509 U.S. at 273. Thus, the question here is whether Defendants have carried their burden of establishing that Stiles was functioning as an advocate when she redacted Magellan's report, produced the redacted report, and chose not to produce "relevant

attachments and other documents" following a request for discovery (Dkt. 19 at 4; Dkt. 5 ¶ 182; Dkt. 5-7 at 2).

An agency attorney's presentation of evidence in an administrative hearing is a prosecutorial function entitled to absolute immunity. *Butz*, 438 U.S. at 516–17. In *Butz*, the Supreme Court explained that an agency attorney who arranges for the presentation of evidence on the record in an administrative adjudication performs a function with "no substantial difference between the function of the agency attorney in presenting evidence in an agency hearing and the function of the prosecutor who brings evidence before a court." *Id.* at 516. The Court reasoned that agency proceedings require a complete record on which the agency's decision can be based and reviewed. *Id.* at 516–17. Accordingly, the attorney was absolutely immune for conduct associated with presenting the agency's case in the administrative proceeding. *Id.* at 517.

The same reasoning extends to certain decisions concerning the disclosure of evidence. *Romano*, 169 F.3d at 1186. In *Romano*, the Ninth Circuit held that the Nevada Gaming Control Board members' decision not to disclose exculpatory evidence was a prosecutorial function entitled to absolute immunity. *Id.* at 1187. There, the Board had prosecuted disciplinary charges against the plaintiff, who later alleged that the Board had failed to disclose exculpatory evidence in its possession. *Id.* at 1184–85. The Ninth Circuit reasoned that that "prosecutorial functions that require the exercise of discretion are absolutely immune" and that the decision whether to disclose unrequested exculpatory evidence was such a function. *Id.* at 1187. The court therefore held that the Board members were entitled to absolute immunity for that decision. *Id.*

Here, Allegiance alleges that Stiles was personally responsible for redacting the Magellan report and deciding which documents the Department would produce in response to Allegiance's discovery requests (Dkt. 5 ¶ 182). Those actions, however, were conducted in preparation for the

contested-case proceedings. Like *Butz*, Stiles's challenged conduct involved the Department's presentation of evidence at an administrative hearing. And, as in *Romano*, Stiles exercised discretion over what evidence to disclose in the course of prosecuting the Department's case. In ruling on Allegiance's motion to compel discovery, ALJ Beck held that, under IDAPA 16.05.03, Allegiance was entitled to disclosure of the evidence the Department would introduce at the hearing (Dkt. 5-7 at 9). His ruling then explained that Allegiance's request for unredacted documents and additional information "falls outside what the Department intends to offer as exhibits" and that "the Department is free to choose what information it intends to rely on in the evidentiary hearing," including partially redacted documents (*id.* at 4 & n.2). Thus, as in *Butz* and *Romano*, Stiles was functioning as an advocate when she made decisions concerning the Magellan report and the Department's discovery responses as part of Department's evidentiary presentation.

Furthermore, the circumstances surrounding Stiles's challenged conduct also supports treating it as part of the adversarial adjudicative process. Allegiance does not allege that Stiles unilaterally withheld the documents without recourse. Rather, the Department took a position regarding what documents it was required to produce, Allegiance disputed that position, and the parties presented the dispute to ALJ Beck (*see* Dkt. 5-7). ALJ Beck then ruled in the Department's favor, concluding that Allegiance's request fell outside the scope of the Department's required prehearing disclosures (*id.* at 3; Dkt. 5 ¶ 196). Whether that ruling was correct is a separate question from whether Stiles's conduct was functionally part of the adjudicative process. *See Meek v. County of Riverside*, 183 F.3d 962, 965 (9th Cir. 1999) (explaining that "a judge is not deprived of immunity because he takes actions which are in error, are done maliciously, or are in excess of his authority"). Allegiance therefore challenges not an unreviewed administrative decision to

withhold evidence, but a position taken by one party during an adversarial proceeding and subsequently upheld by the presiding adjudicator.

Because Stiles's challenged conduct was prosecutorial in nature and functionally part of the adversarial adjudicative process, she is entitled to absolute immunity from Allegiance's § 1983 claim.

**3. Futility of Amendment**

Generally, there is a presumption in favor of dismissing a complaint without prejudice to allow a plaintiff the opportunity to cure the complaint's defects. *Eminence Cap., L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *see also In re Morris*, 363 F.3d 891, 894 (9th Cir. 2004) (ruling cases should be decided on merits, not on technicalities). If the complaint cannot be cured, however, the court should dismiss the suit with prejudice. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009). Here, Allegiance could plead no additional facts that would overcome ALJ Beck's and Stiles's absolute immunity. Accordingly, the Court dismisses Allegiance's § 1983 claim with prejudice.

**B. Supplemental Jurisdiction Over the Remaining State Law Claim**

Because the Court grants Defendants' motion to dismiss Allegiance's § 1983 claim, the only federal claim is dismissed. Thus, the only basis for federal jurisdiction over the remaining state-law claim is through supplemental jurisdiction. *See* 28 U.S.C. § 1367. Under § 1367(c)(3), if "the district court has dismissed all claims over which it has original jurisdiction," then the court "may decline to exercise supplemental jurisdiction" over the remaining claims.

Here, the only claim over which the Court has original jurisdiction is Allegiance's § 1983 claim. Because the Court dismisses that claim, it declines to exercise supplemental jurisdiction over Allegiance's state law claim under § 1367(c)(3). The Court likewise declines to consider Allegiance's request for declaratory relief. *See Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 861

(N.D. Cal. 2023) ("Declaratory relief is not a standalone claim."). Accordingly, the Court denies as moot Defendants' requests to dismiss Allegiance's state law claim based on sovereign immunity and failure to timely serve IDHW.

## IV. ORDER

**IT IS ORDERED that:**

1. Defendants' Motions to Dismiss (Dkt. 13; Dkt. 16) are **GRANTED in part and DENIED in part**. Allegiance's claim for violation of the Due Process Clause pursuant to 42 U.S.C. § 1983 is **DISMISSED WITH PREJUDICE**.

2. Under 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Allegiance's remaining state law claim for judicial review of the agency action against Defendants Idaho Department of Health and Welfare and the Office of Administrative Hearings. Accordingly, Allegiance's state law claim and claim for declaratory relief are **DISMISSED WITHOUT PREJUDICE**. The period of limitations for Allegiance's state law claim is tolled for thirty days after their dismissal under 28 U.S.C. § 1367(d), unless state law provides for a longer tolling period.

UNITED STATES COURTS DISTRICT OF IDAHO

**DATED:** October 07, 2026

Amanda K. Brailsford

Amanda K. Brailsford
U.S. District Court Judge